**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| UNITED STATES ON BEHALF OF ) | |
| KITCHENS TO GO, ) | |
|     Plaintiff, ) | |
| ) | Case No. 1:16-cv-991 |
|     v. ) | |
| ) | |
| JOHN C. GRIMBERG CO., INC., *et al.*, ) | |
|     Defendants. ) | |

**MEMORANDUM OPINION**

In this breach of contract and Miller Act[1] case, plaintiff, a subcontractor on a government contract sued the prime contractor and that contractor's surety to recover payment for work performed on a federal construction project, including for costs incurred as a result of a delay not attributable to the subcontractor. After this action was filed, the prime contractor paid the subcontractor for work performed on the construction project, but not for the costs incurred by the subcontractor relating to delay. The subcontractor now seeks partial summary judgment against the surety for its delay damages. At issue on this partial summary judgment motion are the following questions:

    (1) Does the Miller Act preclude the surety from relying on a no-damages-for-delay provision in the subcontract to deny reimbursement of delay costs to the subcontractor?;

    (2) Can the surety rely on a dispute resolution clause in the subcontract requiring the subcontractor to await completion of the dispute resolution proceeding between the prime contractor and the owner before bringing a Miller Act suit?; and

    (3) Is summary judgment on the amount of delay damages appropriate where, as here, the surety has filed a Rule 56(d) affidavit establishing that further discovery is required to arrive at the amount of delay damages?

---

[1] 40 U.S.C. § 3131 *et seq.*

As the motion for partial summary judgment has been fully briefed and argued, it is now ripe for disposition.

**I.**[2]

Plaintiff, Kitchens-to-Go ("Subcontractor"), is an Illinois Limited Liability Company that supplies temporary kitchen facilities. Defendant John C. Grimberg Co., Inc. ("Prime Contractor") is a general contractor serving the Washington D.C. area. Defendant Hartford Accident and Indemnity ("Surety") is an insurance company that has served as surety for the Prime Contractor on federal construction projects.

In 2012, the United States Department of the Navy ("Government Owner") awarded Navy Contract No N40080-10-D-0492 TO #006 ("Prime Contract") to the Prime Contractor to design and complete improvements on Building 9 at the FBI Academy in Quantico, Virginia. The Surety served as the Prime Contractor's surety for the project, issuing payment and performance bonds pursuant to the Miller Act.

The Prime Contractor then entered into Subcontract No. 834-2-1220 ("Subcontract") with the Subcontractor to furnish, install, lease and remove a temporary kitchen facility for the project. Article 9 of the Subcontract's Standard Terms and Conditions contains a "no-damages-for-delay" clause, which provides that the Prime Contractor shall not be liable for delays beyond its control and that the Subcontractor is "entitled only to reimbursement for any damages for delay actually recovered from the Owner."[3]

---

[2] This recitation of facts is derived from the facts listed in plaintiff's list of undisputed facts to which defendant did not object in its opposition to summary judgment.

[3] Article 9 of the Subcontract's Standard Terms and Conditions provides in full:

> Grimberg shall not be liable to the Subcontractor for any delay, whether foreseeable or not, occurring beyond Grimberg's control or for any delay caused by the Owner, any of its employees, agents or representatives, any other subcontractors or suppliers or any third parties. The Subcontractor shall be entitled only to reimbursement for any damages for delay actually recovered from the Owner, and the

Further, Article 15 of the Subcontract's Standard Terms and Conditions incorporates by reference the dispute resolution procedures in the Prime Contract, providing specifically that "disputes arising out of Owner acts, omissions, or responsibilities shall be resolved in accordance with the disputes procedures in the Prime Contract." Although the Subcontract originally required the Subcontractor to work at Quantico for a period of 13 months and 5 days from March 1, 2013 through April 5, 2014, due to start date delays and other extensions, the project was ultimately extended through June 27, 2015.

On May 18, 2015, the Prime Contractor submitted a cost worksheet to the Government Owner detailing costs in the amount of $686,818 attributable to the extended rental and use of the Subcontractor's temporary kitchen facilities for the delay period from February 2, 2015 through June 1, 2015. A little more than one year later, the Government Owner's Contracting Officer responded to the Prime Contractor's cost worksheet stating:

> "The Navy does not hold the contract with your subcontractor for these trailers and so the lease extension is a matter between Grimberg and your sub, Kitchens-To-Go (KTG). Maintaining kitchen/cafeteria function space until the permanent kitchen/cafeteria achieves [Beneficial Occupancy Date] is Grimberg's contractual responsibility." (Doc. 27-8 Ex. H at 2).

The Government Owner's Contracting Officer further noted that "all costs associated with lease extensions of the temporary kitchen trailers remain Grimberg's responsibility." *Id.* at 3.

On August 2, 2016, the Subcontractor submitted an Application for Payment to the Prime Contractor requesting $734,496. The Application included requests for (i) $127,275 for use of

---

Subcontractor shall also be entitled, entirely at its own expense, to exercise against the Owner all rights available under the provisions of the Prime Contract to recover said damages. Grimberg shall have the right, at any time and for any reason, to delay or suspend the whole or any part of the work herein contracted for and the Subcontractor expressly understands and agrees that it shall not be entitled to any monetary compensation whatsoever for any delay or suspension ordered or caused by Grimberg, and that a time extension only shall be granted for such delays even if such delays or suspensions: (1) are of a kind not contemplated by the parties; (2) amount to an abandonment of the contract; or (3) are caused by active interference.

the kitchen from August 2014 to September 2014 (Subcontract Balance claim); and (ii) $ 607,221 for the extended rental of the kitchen from February 2015 through June 2015 (Extended Lease claim). On the same day—August 2, 2016—the Subcontractor filed this complaint under the Miller Act against the Prime Contractor for breach of the Subcontract and against the Surety for recovery of this amount due pursuant to the payment bond. At the time the Subcontractor filed this complaint, the Prime Contractor had more than 60 payment proposals pending with the Government Owner. Accordingly, in January 2017, the Prime Contractor moved to extend discovery until June 30, 2017. And, on January 9, 2017, an order issued extending discovery and granting a stay until June 30, 2017. On June 26, 2017, the stay was lifted to allow the Subcontractor to file the partial summary judgment motion at issue here.

The Subcontractor filed this motion for partial summary judgment against the Surety on both the Subcontract Balance and Extended Lease claims. With respect to the Subcontract Balance claim, the Subcontractor filed a notice on August 16, 2017 stating that the Prime Contractor intended to make a payment to the Subcontractor in the amount of $127,275. Because the Prime Contractor has agreed to pay the amount in question, this claim is moot and the Subcontractor's motion for summary judgment on this point must be denied. Accordingly, the only remaining amount in question is the Subcontractor's claim for the delay damages associated with the Extended Lease claim. With respect to the Extended Lease claim, the Subcontractor argues there is no genuine dispute of material fact that the Subcontractor provided a temporary kitchen facility during the delay period (February 2015 through June 2015) for which it was not paid and thus is entitled to payment for this on the Miller Act bond. The Subcontractor further contends that the Surety has no valid defenses under the Subcontract because a surety is not entitled to enforce a no-damages-for-delay clause under the Miller Act,

4

and the dispute resolution clause in the Subcontract cannot be construed as a waiver of the Subcontractor's Miller Act rights.

The Surety opposes the Subcontractor's motion, arguing that the no-damages-for-delay provision of the Subcontract provides that the Subcontractor is entitled only to reimbursement for delay costs actually recovered from the Government Owner. Because the Government Owner has thus far rejected the Prime Contractor's request for payment on the Extended Lease claim, the Subcontractor has not established an amount due under the Subcontract and thus has not stated a Miller Act claim. Furthermore, the Surety argues that the case should be stayed pending completion of the dispute resolution proceedings between the Prime Contractor and the Government Owner. Finally, the Surety contends that because discovery has not yet concluded, the Surety has not had the opportunity to determine whether a genuine issue of material fact remains as to the amount owed to the Subcontractor. These arguments are addressed in turn.

## II.

The standard for review on summary judgment motion is too well-settled to warrant extended discussion. Under Rule 56, Fed. R. Civ. P., summary judgment is appropriate only where there is "no genuine dispute as to any material fact" such that the moving party "is entitled to judgment as a matter of law." *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute exists if "there is sufficient evidence on which a reasonable jury could return a verdict in favor of the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating this question, courts must "view the evidence in the light most favorable to . . . the nonmovant." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002).

# III.

Analysis of the parties' dispute concerning the validity and application of the no-damages-for-delay subcontract clause properly begins with the recognition of certain principles applicable to Miller Act cases. The Miller Act provides that before the Federal Government awards a public works contract exceeding $100,000, the prime contractor must furnish a payment bond with a surety "for the protection of all persons supplying labor and material in carrying out the work provided for in the contract." 40 U.S.C. § 3131(b)(2). And importantly, the Act further provides that:

> Every person that has furnished labor or material in carrying out work provided for in a contract for which a payment bond is furnished . . . that has not been paid in full . . . may bring a civil action on the payment bond for the amount unpaid.

*Id.* § 3133(b)(1). A cause of action under the Miller Act accrues "90 days after the day on which the person did or performed the last of the labor . . . for which the claim is made." *Id.* In general, a surety assumes only the liability of a principal. *United States ex rel. Walton Tech., Inc. v. Weststar Eng'g, Inc.*, 290 F.3d 1199, 1205-06 (9th Cir. 2002). In Miller Act cases, however, courts "must look beyond the principal's contractual liability, to the Miller Act itself, in defining the limits of coextensive liability between surety and its principal." *Id.* at 1208. In this regard, the Supreme Court has recognized that "[t]he surety's liability on a Miller Act bond must be at least coextensive with the obligations imposed by the Act if the bond is to have its intended effect." *United States ex rel. Sherman v. Carter*, 353 U.S. 210, 215-16 (1957).[4] And importantly, as well-settled authority makes clear, the Miller Act trumps conflicting suretyship

---

[4] The Surety cites to *United States ex rel. James B. Donaghey, Inc. v. Dick Corp.*, 2010 WL 4666747, at *3 (N.D. Fla. Nov. 9, 2010) and *United States ex rel. E. Gulf, Inc. v. Metzger Towing, Inc.*, 910 F.2d 775, 781 (11th Cir. 1990) to argue that Congress did not intend to extend the liability of the surety beyond that of the contractor. The origin of that proposition, however, is *United States ex rel. Harrington v. Trione*, 97 F. Supp. 522, 526 (D. Colo. 1951), a District of Colorado opinion from 1951. In that opinion, the court cites no support for the proposition in the text of the Miller Act, its statutory scheme, its purpose, or even in its legislative history.

6

principles such that a surety can only enforce contract terms to limit its Miller Act liability if those terms are consistent with the Act. *See Walton Tech.*, 290 F.3d at 1206-08.[5]

These principles, applied here, compel the conclusion that the Surety is not entitled to rely on the Subcontract's no-damages-for-delay clause to avoid Miller Act liability to the Subcontractor for delay damages. This is so because the no-damages-for-delay clause contravenes both the text and the purpose of the Miller Act. To begin with, the text of the Miller Act provides that a subcontractor's cause of action arises after the passage of time—specifically, 90 days after the subcontractor provides the last labor or materials for which the claim is made—not after the occurrence of some other condition such as payment by an owner. *See* 40 U.S.C. § 3133(b)(1) ("Every person that has furnished labor or material . . . and that has not been paid in full within 90 days after the day on which the person did or performed the last of the labor . . . may bring a civil action on the payment bond for the amount unpaid at the time the civil action is brought . . . ."). In other words, the Miller Act text clearly makes the 90-day provision the only condition for an action on the payment bond. Thus, a no-damages-for-delay clause contradicts this plain statutory text by adding a condition to the action on the payment bond that a subcontractor can only bring a Miller Act claim if the owner has paid the prime contractor for the delays.

The Surety attempts to counter this textual argument by claiming that if an owner has not yet paid the prime contractor, as here, the subcontractor will not be able to show an amount due under the Miller Act and thus cannot bring a claim in the time provided for in the statute. This

---

[5] *See also United States ex rel. Tusco Inc. v. Clark Constr. Grp., LLC*, 235 F. Supp. 3d 745, 756-57 (D. Md. 2016) (noting that sureties are not entitled to enforce certain contract provisions "despite the fact that the general rule of suretyship law is that a surety's liability is coextensive with that of the principal"); *United States ex rel. Marenalley Constr. LLC v. Zurich Am. Ins. Co.*, 99 F. Supp. 3d 543, 550 (E.D. Pa. 2015) ("[A] subcontract term that conflicts with the Miller Act is ineffective in a suit against the surety on the payment bond."); *United States ex rel. Acoustical Concepts, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 635 F. Supp. 2d 434, 437-38 (E.D. Va. 2009) ("Yet, general principles of suretyship law that conflict with the Miller Act's terms and purpose must give way to the Act.").

7

argument is an attempt to rewrite or amend the statute and therefore fails. The Miller Act clearly establishes only one condition for an action on the payment bond, namely the 90-day period after completion of the work.

Nor does the no-damages-for-delay clause operate as a valid waiver of the Miller Act's 90-day condition on a suit on the payment bond. Simply put, a no-damages-for-delay clause falls far short of meeting the statutory requirements for a waiver. In 1999, Congress amended the Miller Act to allow subcontractors to waive their right to bring a Miller Act suit provided that the waiver was "(1) in writing; (2) signed by the person whose right is waived; and (3) executed *after* the person whose right is waived has furnished labor or material for use in the performance of the contract." 40 U.S.C. § 3133(c) (emphasis added). The Act provides further that any other "waiver of the right to bring a civil action on a payment bond . . . is void." *Id.* The Subcontractor agreed to the no-damages-for-delay clause at issue here when the Subcontract was executed in 2012, well before the Subcontractor provided any labor on the project. Thus, the no-damages-for-delay clause does not meet the statutory requirement that a valid waiver must be executed after the subcontractor has furnished work on the project. Therefore, any argument that the no-damages-for-delay clause operates as a valid waiver of the Subcontractor's right to sue on the payment bond clearly fails. *See United States ex rel. Forrest B. White, Jr. Masonry, Inc. v. Safeco Ins. Co. of Am.*, 2013 WL 5970435, at *3 (W.D. Ky. Nov. 8, 2013) (finding a no-damages-for-delay clause to be void as an implied waiver under § 3133(c)).[6]

The no-damages-for-delay clause in this case not only contradicts the Miller Act's language but is also inconsistent with the purposes of the Act. In this respect, the Supreme Court has recognized that the Miller Act is "highly remedial" and "represents a congressional effort to

---

[6] *See also Marenalley Constr. LLC*, 99 F. Supp. 3d at 549 ("[T]he requirement that any waiver be executed after completion of the subcontractor's work would be meaningless if general contractors could simply craft subcontract provisions that effectively preclude Miller Act suits.").

protect persons supplying labor and material for the construction of federal public buildings in lieu of the protection they might receive under state statutes with respect to the construction of nonfederal buildings." *Sherman*, 353 U.S. at 216. Specifically, a supplier of labor and materials on a nonfederal project would ordinarily be able to secure a mechanic's lien under state law. A lien, however, cannot attach to government property, and thus subcontractors on federal construction projects do not enjoy the same protection as that afforded by the law to subcontractors on nongovernmental projects. Recognizing this, the Supreme Court made clear that "[t]he Miller Act was intended to provide an alternative remedy to protect the rights of these suppliers." *F.D. Rich Co. Inc. v. United States ex rel. Indus. Lumber Co., Inc.*, 417 U.S. 121-22 (1974). Simply put, because federal subcontractors cannot file mechanics liens on a government project, the purpose of the Miller Act is "to ensur[e] subcontractors' prompt payment for their work on federal construction projects … ." *Acoustical Concepts Inc.*, 635 F. Supp. 2d at 435.[7]

The Miller Act's purpose of providing subcontractors' prompt payment is undermined if sureties can enforce contract provisions, as here, that condition recovery by the subcontractor on payment by the owner. The very purpose of a surety bond under the Miller Act, and indeed, generally, is to ensure that claimants who perform work are paid for the work in the event and even if the principal does not pay.[8] The no-damages-for-delay provision at issue here frustrates this Miller Act purpose to ensure subcontractors who provide labor and material on government projects receive prompt payment.

---

[7] *See Clark-Fontana Paint Co. v. Glassman Constr. Co*., 397 F.2d 8, 10 (4th Cir. 1968) (holding the Miller Act should be construed liberally to "effectuate the Congressional intent to protect those whose labor and materials go into public projects.").

[8] *See Moore Bros. Co. v. Brown & Root Inc.*, 207 F.3d 717, 723 (4th Cir. 2000) (noting, in a case applying Virginia law to a private construction project, that "the very purpose of securing a surety bond contract is to ensure that claimants who perform work are paid for their work *in the event that the principal does not pay*").

9

The parties have not cited to any published or controlling circuit authority squarely addressing the enforceability of no-damages-for-delay clauses, and the few lower courts that have addressed the issue are divided.[9] But courts are uniform in finding that certain types of analogous clauses are not enforceable under the Miller Act. For example, courts have consistently held that sureties are not entitled to enforce pay-when-paid or pay-if-paid clauses in construction contracts. *Tusco Inc.*, 235 F. Supp. 3d at 756 (surveying cases and noting that "federal courts . . . have unanimously held that a surety is not entitled to the benefits of its principal's pay-when-paid or pay-if-paid clause"). Like the no-damages-for-delay clause at issue here, pay-when-paid or pay-if-paid clauses provide that the subcontractor is entitled to payment on the bond only if or when the owner of the contract pays the prime contractor. But as noted *supra*, because the statute explicitly conditions a subcontractor's ability to bring a suit on the payment bond only on the passage of time, clauses that condition payment of the subcontractor on factors other than the passage of time—e.g., payment by the owner—conflict with the Miller Act's text and purpose and are accordingly, unenforceable. *See Tusco*, 235 F. Supp. 3d at 759 ("The Miller Act gives a subcontractor the right to sue a payment bond's surety based 'on the passage of time,' not on the payment from the federal government to a prime contractor." (quoting *Walton Tech.*, 290 F.3d at 1205)).[10] In this regard, courts have recognized that "[w]here

---

[9] *Compare United States ex rel. Aarow Elec. Sols. LLC v. Cont'l Cas. Co.*, 2017 WL 3642957, at *8 (D. Md. Aug. 24, 2017) (finding that a no-damages-for-delay clause, essentially identical to the clause at issue here, contravened the text and purpose of the Miller Act because it was "similar to the clause that the Ninth Circuit found impermissible in *Walton Technology, Inc.*" in that it "would affect [the subcontractor's] right of recovery"), *and Forrest B. White, Jr. Masonry, Inc.*, 2013 WL 5970435, at *3 (finding that a no-damage-for-delay clause is "void under the Miller Act" because it "effectively amounts to a waiver of [the subcontractor's] right to bring an action on the payment bond."), *with Chasney & Co., Inc. v. Hartford Accident & Indem*, 2015 WL 3887792, at *3 (D. Md. June 22, 2015) (contra); *United States ex rel. Kogok Corp. v. Travelers Cas. & Sur. of Am.*, 55 F. Supp. 3d 852, 859 (N.D. W.Va. 2014) (contra), *and Morganti Nat'l Inc. v. Petri Mech. Co., Inc.*, 2004 WL 1091743, at *11 (D. Conn. May 13, 2004) (contra).

[10] *See also United States ex rel. T.M.S. Mech. Contractors, Inc. v. Millers Mut. Fire Ins. Co. of Tex.*, 942 F.2d 946, 949 n.6 (5th Cir. 1991) (holding that a "pay-when-paid" clause does not preclude a subcontractor's recovery on the payment bond because the Miller Act "conditions payment of the subcontractor not on payment by the government

subcontract terms effect timing or the right of recovery under the Miller Act, enforcement of such terms to preclude Miller Act liability contradict the express terms of the Miller Act." *Walton Tech., Inc.*, 290 F.3d at 1207.[11] Precisely this is true of the no-damages-for-delay clause at issue here.

The Surety's principal argument in opposition to the result reached here is that the no-damages-for-delay clause does not affect the timing or the right of recovery, but instead affects only the measure of recovery. This argument fails as it mischaracterizes the effect of the no-damages-for-delay clause; clearly, the clause does affect the timing and indeed, the right of recovery for delay. Thus, the Surety's argument that no-damages-for-delay clauses do not contradict the terms of the Miller Act and instead affect only the measure of recovery is not correct.[12] Because the no-damages-for-delay clause does affect the timing, and indeed the right of recovery, it is contrary to the text and the purposes of the Miller Act and therefore the Surety cannot rely on that provision to defeat or delay a suit on a payment bond under the Miller Act.

To be sure, the Surety correctly notes that a subcontract can define or alter the measure of the payments due under the subcontract. *See United States ex rel. Woodington Elec. Co., Inc. v. United Pac. Ins.*, 545 F.2d 1381, 1383 (4th Cir. 1976) (holding that because an amount due under the Miller Act is "determined by reference to the subcontract," a subcontractor's compensation in a Miller Act case can be measured by a share of profits, rather than in terms of costs of labor and

---

to the contractor, but rather on the passage of time from completion of the work or provision of materials"); *United States ex rel. Ackerman v. Holloway Co*., 126 F. Supp. 347, 348 (D.N.M. 1954) ("Any contractual deviations from the objectives of the Miller Act, which cause or tend to cause unwarranted delay to good faith sub-contractors, are against the public policy of the Act, and should not afford an escape to those prime contractors who have secured insertion of the above covenants in contracts between them and sub-contractors.").

[11] *See also United States ex rel. Straightline Corp. v. Am. Cas. Co. of Reading, PA*, 2007 WL 2050323 (N.D. W. Va. July 12, 2007); *United States ex rel. DDC Interiors, Inc. v. Dawson Const. Co.*, 895 F. Supp. 270 (D. Colo. 1995); *Ackerman.*, 126 F. Supp. 34.

[12] The cases the Surety cites that characterize no-damages-for-delay clauses as affecting only the measure rather than the timing of the payment are simply incorrect in that regard. *See Chasney & Co., Inc.,* 2015 WL 3887792, at *3; *Kogok Corp.*, 55 F. Supp. 3d at 859; *Morganti Nat'l Inc.*, 2004 WL 1091743, at *11.

material); *see also Taylor Constr. Inc. v. ABT Serv. Corp.*, 163 F.3d 1119, 1123 (9th Cir. 1998) (concluding that a subcontractor can recover savings realized on a project in addition to the costs of labor and materials when the subcontract contains a savings clause). But these cases are inapposite because read carefully, these cases "stand[], at most, for the proposition that, in a Miller Act case, reference to the subcontract must be made to define the manner of payment in order to determine sums due to the subcontractor for providing labor and materials." *Acoustical Concepts Inc.*, 635 F. Supp. 2d at 439 (holding that sureties "may not rely on the setoff provisions in the subcontracts that refer to amounts plaintiff may owe the prime contractor in connection with an unrelated, non-Miller Act project"). Here, by contrast, the no-damages-for-delay clause affects the Subcontractor's very right to recovery, not simply the form or manner of payment. *See Aarow Elec. Sols.*, 2017 WL 3642957, at *12 ("Unlike the clauses at issue in *Woodington Electric* and *Taylor Construction*, which affect how compensation was to be measured, the clauses at issue here would affect Aarow's right of recovery."). Thus, although in a Miller Act case courts must look to the subcontract to determine the scope of the subcontractor's work and the form of payment for that work—e.g., by fixed price, time and materials, profits or other means—the subcontract cannot eliminate the right to payment altogether, or delay it, unless the subcontract does so in a manner consistent with the terms of the Miller Act.

In sum, the no-damages-for-delay clause at issue here contravenes the text and purpose of the Miller Act because, like pay-when-paid or pay-if-paid clauses, this no-damages-for-delay clause affects both the timing and the right of recovery. And because the Miller Act trumps conflicting suretyship principles, a surety cannot enforce a no-damages-for-delay clause to limit Miller Act liability on a payment bond. Accordingly, the Surety may not rely on the no-

damages-for-delay clause in the Subcontract as a defense to Miller Act liability on the payment bond, and the Subcontractor is entitled to summary judgment on this issue.

IV.

It is necessary next to determine whether the Subcontractor must await the completion of the dispute resolution process provided for in the Subcontract before the Subcontractor can show an amount due under the Miller Act. Specifically, the Surety argues that the Subcontractor is not entitled to partial summary judgment because the Subcontractor must await completion the dispute resolution procedure between the Government Owner and the Prime Contractor provided for in Article 15 of the Subcontract. Article 15 states that "disputes arising out of Owner acts, omissions, or responsibilities shall be resolved in accordance with the disputes procedures in the Prime Contract." The Prime Contract, in turn, incorporates the dispute resolution procedures provided for in the Contract Disputes Act ("CDA"), 41 U.S.C. §§ 7101 *et seq.*[13] Based on these provisions, the Surety contends the case should be stayed pending the outcome of the ongoing dispute resolution proceedings between the Prime Contractor and the Government Owner.

The Surety in this case cannot rely on the Article 15 dispute resolution provision to delay further the claim under the Miller Act for delay damages because that result would also be inconsistent with the text and purpose of the Miller Act. Clearly, the dispute resolution provision would impose an additional condition on the Subcontractor's right to bring a Miller Act suit in contravention of the statutory text which plainly requires only the passage of 90 days before a subcontractor can bring a suit on the payment bond. Nor, is the dispute resolution provision a

---

[13] The CDA establishes "an administrative process" in which the contractor first submits "its claims for payment to the government's contracting officer." *Marenalley Constr. LLC*, 99 F. Supp. 3d at 546 (citing 41 U.S.C. § 605(a) (1978), amended by 41 U.S.C. § 7103). Under the CDA, the contracting officer must issue a decision "within a reasonable time. . . . taking into account such factors as the size and complexity of the claim and the adequacy of the information in support of the claim provided by the contractor." 41 U.S.C. § 605(c)(3). The contractor may appeal the contracting officer's decision to the Board of Contract Appeals, *id.* § 606, amended by 41 U.S.C. § 7104 (2011), or to the United States Court of Federal Claims, *id.* § 609, amended by 41 U.S.C. § 7104.

valid waiver under the Miller Act because the provision was executed before the Subcontractor provided work on the federal project and before the Subcontractor incurred delay costs. Finally, the dispute resolution clause contravenes the purpose of the Miller Act by needlessly delaying the Subcontractor's recovery while denying the Subcontractor a forum in which to adjudicate its rights.[14] Courts addressing this issue with respect to similar provisions have reached essentially the same result and accordingly, have declined to enter stays in Miller Act cases.[15]

Seeking to avoid this straightforward conclusion, the Surety refers back to the no-damages-for-delay clause to support its argument, contending that the dispute proceedings with the Government Owner will determine whether there is an amount due under the Subcontract because the Subcontractor is entitled only to the reimbursement the Prime Contractor receives from the Government Owner. At bottom, however, this argument amounts to another attempt to use the no-damages-for-delay clause to limit the surety's liability in a Miller Act suit—a position that, as described above, is inconsistent with the text and the purposes of the Miller Act.

---

[14] The Surety points to Article 9 of the Subcontract, which allows the Subcontractor "entirely at its expense, to exercise against the Owner all rights available under provisions of the Prime Contract to recover [delay] damages" and to "exercise Grimberg's rights under the Prime Contract" where disputes exist. Yet, by its terms, this provision allows the Subcontractor only to exercise the Prime Contractor's rights under the Prime Contract; the provision does not allow the Subcontractor to exercise its own rights under the Subcontract and to adjudicate those rights with the government. In fact, in rejecting the Prime Contractor's initial cost worksheet, the Government Owner Contracting Officer stated as much, noting that "[t]he Navy does not hold the contract with your subcontractor for these trailers and so the lease extension is a matter between Grimberg and your sub, Kitchens-To-Go (KTG)." The Subcontract provision allowing the Subcontractor to exercise the Prime Contractor's rights, therefore, does not alter the conclusion that the Subcontractor need not await the completion of proceedings between the Prime Contractor and the Government Owner before seeking to vindicate its rights under the payment bond.

[15] *See, e.g., Aarow Elec. Sols.*, 2017 WL 3642957, at *8 (declining to stay a case involving a provision that stated: "Disputes arising out of Owner acts, omissions, or responsibilities shall be resolved in accordance with the disputes procedures in the Prime Contract"); *Tusco*, 235 F. Supp. 3d at 749 (declining to stay case where provision provided that "[i]n any case of any dispute between Clark and the Subcontractor, in any way relating to or arising from any act or mission of the Owner or involving the Contract Documents, Subcontractor agrees to be bound to Clark to the same extent that Clark is bound to the Owner, by the terms of the Contract Documents, and by any and all preliminary and final decisions or determinations made thereunder by the party."); *Marenalley Constr. LLC,* 99 F. Supp. 3d at 553 (declining to stay case where prime contractor claimed that various provisions incorporated the Prime Contract's dispute resolution provision in the subcontract).

The Surety's four cited cases in support of a stay are inapposite. Specifically, those cases all involved subcontract provisions in which the subcontractor agreed to stay any Miller Act claims pending the outcome of the prime contractor's dispute resolution process.[16] Here, by contrast, Article 15 of the Subcontract merely contains a general provision stating that "[d]isputes arising out of Owner acts, omissions, or responsibilities shall be resolved in accordance with the disputes procedures in the Prime Contract." As noted above, courts have more often declined to stay cases involving provisions like the provision at issue here.[17]

The Surety's focus on the legislative history of the Miller Act is similarly unpersuasive. Specifically, the Surety relies on a House Report to argue that Congress did not intend to disrupt dispute resolution procedures provided for in subcontracts when it crafted the Miller Act. H.R. Rep. No. 106-277 at 5 (1999) (noting that in passing the Miller Act, Congress did not intend to "void subcontract provisions requiring arbitration or other alternative methods of resolving disputes . . . . [T]he bill respects the freedom of the parties to the subcontract to specify means to resolve their disputes."). Even assuming arguendo that it is appropriate to consider this

---

[16] *See United States v. Dick/Morganti*, 2007 WL 3231717, at *1 (N.D. Cal. Oct. 30, 2007) (entering stay where subcontract stated that subcontractor "agree[d] . . . to stay any action filed by the Subcontractor until the dispute resolution and appeals process between the Contractor and the Owner is exhausted"); *United States ex rel. Trans Coastal Roofing Co. v. David Boland, Inc.*, 922 F. Supp. 597, 598 (S.D. Fla. 1996) (entering stay where subcontract stated that subcontractor "agree[d] to stay an action or claim against [the contractor's Miller Act bond] pending the complete and final resolution of the Prime Contract's contractual remedial procedure."); *United States v. FEDCON Joint Venture*, 2017 WL 897852, at *2 (E.D. La. Mar. 7, 2017) (entering stay where subcontract stated that the subcontractor "expressly agrees to stay any action or claim under this Subcontract Agreement against the Contractor and against the Contractor's surety and its Payment Bond and Performance Bond pending the complete and final resolution of the Prime Contractor's contractual remedial procedure"); *United States v. Bhate Envt'l Assocs., Inc.*, 2016 WL 544406, at *3 (D. Alaska Feb. 9, 2016) (entering stay where subcontract stated that the subcontractor "shall not maintain any proceeding against [the prime contractor] with respect to the Owner-related claims until the Owner's dispute resolution process is complete").

[17] *See supra* note 14. The additional cases the Surety cites are inapposite. *Seal & Co., Inc. v. A.S. McGaughan*, 907 F.2d 450, 455 (4th Cir. 1990) did not involve a Miller Act claim, and *Moretrench Am. Corp. v. S.J. Groves & Sons Co.*, 839 F.2d 284, 1290 (7th Cir. 1988) upheld a stay simply because the Seventh Circuit determined it did not have jurisdiction to consider the issue.

legislative history, [18] the Surety stretches the meaning of the report well beyond its plain terms. The report simply stands for the proposition that the Miller Act was not intended to disrupt the dispute resolution procedures between a subcontractor and a prime contractor provided for in a subcontract. By contrast, as described above, the dispute resolution procedures at issue here are between the Prime Contractor and the Government Owner, not the Subcontractor and the Prime Contractor. As such, this legislative history does not the diminish the force of the conclusion that the Subcontractor's right to bring a Miller Act claim on a payment bond is not contingent on the dispute resolution proceedings between the Prime Contractor and the Government Owner.

In sum, the Subcontractor need not await the completion of the dispute resolution proceedings between the Government Owner and the Prime Contractor before the Subcontractor can show an amount due under the Miller Act, and accordingly, it would be inappropriate to enter another stay in this case. The Subcontractor is thus entitled to summary judgment on these issues.

V.

Given the Surety cannot rely on the no-damages-for delay clause to avoid Miller Act liability and given that the Subcontractor need not await the completion of the dispute resolution process to show an amount due under the Miller Act, the question remains whether there is a genuine dispute as to the amount owed for delay damages. In essence, what occurred in this case is that for reasons unrelated to the Subcontractor, the project was extended and the Prime Contractor required the Subcontractor to continue to provide kitchen facilities for the extended contract. The only question remaining on the Subcontractor's claim for delay damages is the

---

[18] As an initial matter, "[t]he Constitution gives legal effect to the 'Laws' Congress enacts [] not the objectives its Members aimed to achieve in voting for them" and accordingly, legislative history should be assigned little weight. *Graham Cty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 302 (2010) (Scalia, J., concurring).

16

amount of those damages. The Subcontractor argues that the Prime Contractor acknowledged the Subcontractor's entitlement to the amount sought—$734,496 when the Prime Contractor submitted the Subcontractor's claim to the Government Owner. In opposition, the Surety contends that passing along a claim to an owner is different from acknowledging an amount due and that the Surety needs to complete discovery to be able to litigate fully the amount owed. And significantly, the Surety submitted a Rule 56(d) affidavit in support of this matter. The Federal Rules of Civil Procedure provide that a district court may defer considering or deny a motion for summary judgment where a "nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Rule 56(d), Fed. R. Civ. P. Given the Surety submitted a Rule 56(d) affidavit, it is therefore appropriate to deny summary judgment as to the amount of delay damages at this time.

In sum, given the text and purposes of the Miller Act, the Subcontractor's summary judgment motion is granted in part and denied in part. The Subcontractor's motion for summary judgment is granted on two issues: (1) the Surety may not rely on the no-damages-for-delay clause in the Subcontract to limit its Miller Act liability; and (2) the Subcontractor need not await the completion of the dispute proceedings between the Prime Contractor and the Government Owner to show an amount due under the Subcontract. The Surety, however, needs to complete discovery to determine whether a genuine dispute of material fact exists as to the amount owed to the Subcontractor. Accordingly, the Subcontractor's summary judgment motion is denied with respect to the amount of damages.

An appropriate order will issue.

/s/
T. S. Ellis, III
United States District Judge

17